UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In Re:                                                          Chapter 7

Jim Edwin Cortazar a/k/a James Edwin                            Case No. 824-74199-845
Cortazar,

        Debtor.

-------------------------------------------------------------X

Vincent Cortazar,                                               Adv. Proc. No.

        Plaintiff,                                     Complaint

    - against -

Jim Edwin Cortazar a/k/a James Edwin
Cortazar,

        Defendant.

-------------------------------------------------------------X

Vincent Cortazar ("Plaintiff"), by his attorneys, Weinberg, Gross & Pergament
LLP, as and for his Complaint Against the Defendant, Jim Edwin Cortazar a/k/a James Edwin
Cortazar, respectfully represents as follows:

PARTIES AND JURISDICTION

1.      This is an adversary proceeding commenced pursuant to U.S.C. § 523(a)(2),
11 U.S.C. § 523(a)(4), 11 U.S.C. § 727(a)(2)(B), 11 U.S.C. § 727(a)(4)(A), 11 U.S.C. § 727(a)(6)
and Bankruptcy Rules 7001(d) and 7001(f) seeking to object to the dischargeability of debt and to
the Debtor's discharge.

2.     Jurisdiction of this matter has been conferred upon this Court under 28 U.S.C. § 157(b)(2)(A), 28 U.S.C. § 157(b)(2)(I), 28 U.S.C. § 157(b)(2)(J) and 157(b)(2)(O) and 28 U.S.C. § 1334.

3.     Venue is properly place in this Court in accordance with 28 U.S.C. § 1409.

4.     This adversary proceeding is a core proceeding as said term is defined in 28 U.S.C. § 157(b)(2) as it arises in or under the Chapter 7 case of Jim Edwin Cortazar a/k/a James Edwin Cortazar (sometimes referred to as the "Debtor"), pending in the Eastern District of New York, Central Islip Division under Case No. 824-74199-845.  To the extent that it is determined that this matter or any claim asserted herein is non-core, then notwithstanding, Plaintiff consents to the entry of final orders or judgments by the United States Bankruptcy Court.

5.     Plaintiff, Vincent Cortazar, is an individual with a primary residence at 6 Carmen Road, Dix Hills, New York 11746.

6.     Defendant, Jim Edwin Cortazar a/k/a James Edwin Cortazar ("James Cortazar" or "Defendant" or "Defendant James Cortazar"), is the Chapter 7 Debtor herein.

7.     This case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on November 1, 2024 (the "Filing Date"). The case was thereafter converted to Chapter 7 on February 10, 2025.

8.     Kenneth P. Silverman, Esq. was appointed the Chapter 7 Trustee (the "Trustee"), duly qualified and acting as such.

BACKGROUNG

A.     THE FIRST QUEENS ACTION

9.     By Summons and Complaint dated April 27, 2016, Plaintiff commenced an action against James Cortazar entitled *Vincent Cortazar, Individually and Derivatively on behalf*

2

*of 47th Road LLC against James Cortazar and 47th Road LLC, a New York Limited Liability Company,* in Supreme Court, State of New York, ,County of Queens under Index No. 705029/2016 (the "First Queens Action").

10.     Plaintiff and James Cortazar were both fifty (50%) percent members and managing members of 47th Road LLC (the "Company"). The First Queens Action arose out of Defendant's gross misappropriation of the assets of the Company, his breach of fiduciary duty, fraud, waste, conversion, unjust enrichment and negligence.

11.     The Company was formed on August 18, 2009 for the purpose of owning and managing a single piece of property known as 5-19 47th Road, Long Island City, New York (the "Premises"). At the time of its formation and up to the date of the commencement of the First Queens Action, Plaintiff Vincent Cortazar and Defendant James Cortazar were the only members and managing members of this Company. The Company acquired its sole asset, the Premises, by Deed dated August 25, 2009 from James Cortazar and Vincent Cortazar as joint tenants to the Company.

12.     The Premises consisted of an 8 unit, 4 story walk-up apartment building in the Long Island City section of Queens. The annual rental derived from the Premises was approximately $160,000.00. The Premises was mortgaged on August 25, 2009 and October 4, 2010 for $800,000.00 and $250,000.00, respectively.

13.     In February 2011, the Company, together with a related entity, Cojam Realty Inc., borrowed $1,200,000.00 from Hudson Valley Bank. This loan was collateralized by mortgage on the Premises.

14.     Shortly after the refinancing the Premises with Hudson Valley Savings Bank, Defendant James Cortazar locked the Plaintiff Vincent Cortazar out of the Company's

3

offices, diverted the rents and profits of the Company in detriment to the Company and its member, Vincent Cortazar.

15.     Thereafter, James Cortazar had the tenants send their rental payments to a different bank account or to a different payee thereby preventing the Company from receiving any of the benefits of these rents and profits due to the Company since approximately the summer of 2011 up to the date of commencement of the First Queens Action.

16.     Thereafter, on March 1, 2016, the mortgage originally with Hudson Valley Savings bank matured and the Bank demanded full payment of the principal due in the approximate amount of $1,200,000.00. No arrangement had or could be made for the payment or refinance of this mortgage without the cooperation of Defendant James Cortazar, who refused to do so, and who continued to collect the rents and profit for his own self-interest. As a result of his action, the Company was in danger of losing its only asset through foreclosure by the mortgagee.

17.     A trial was held in the First Queens Action before the Honorable Timothy J. Dufficy on October 17, 2018, October 18, 2018, October 19, 2018; November 5, 2018, November 8, 2019, November 16, 2018 and November 19, 2018.

18.     Plaintiff was awarded a judgment against Defendant James Cortazar in the First Queens Action on October 23, 2019 (the "October 23 Judgment") in the sum of $1,329,024.01. The October 23 Judgment also referenced Judge Dufficy's decision after trial entered on June 7, 2019.

4

19.    In Judge Dufficy's Conclusions of Fact and Law rendered in the October 23 Judgment and Decision after Trial entered on June 7, 2019, the Court found that Defendant James Cortazar had breached his fiduciary duties to his brother as a fifty (50%) percent owner/member of the Company by:

a.    diverting the sum of $714,420.21 from the Company to the entity, the Rio Dell Project, involving real property in California without sharing same with the Company or the Plaintiff;

b.    permitting the sum of $548,521.50 to be docketed as Judgment liens against the Premises during his control of the Company;

c.    failing to pay and allowing the mortgage on the Premises to go into default by refusing to recognize Plaintiff as a member of the Company, causing default interest to become due with bank attorney's fees in the sum of $625,712.94;

d.    failing to disburse and properly share with Plaintiff Vincent Cortazar fifty (50%) percent of the rents and profits of the Company;

e.    failing to provide the Receiver the sum of $6,227.26 in rent securities; and

f.    failing to pay water and sewer rents in the City of New York in the sum of $16,936.21.

20.    Judge Dufficy rules in the October 23 Judgment and Decision after Trial entered on June 7, 2019 that as members of 47th Road, LLC, both the Plaintiff and the Defendant had a fiduciary duty not only to each other but also to the Company. The members of a limited liability company may stand in a fiduciary relationship to each other and to the LLC. The

5

managing member of a limited liability company owes a non-managing member a fiduciary duty. *Pokoik v. Pokoik*, 115 AD3d 428 [1st Dept. 2014].

21.    As also noted by Judge Dufficy, Defendant James Cortazar, during his management of the Company, collected the rents and failed to make needed repairs, subjecting the Company to exorbitant judgments and violations while at the same time defaulting in making the mortgage payments and allowing the mortgage to go into default.

22.    The October 23 Judgment and Decision after Trial entered on June 7, 2019 held that Plaintiff had presented credible evidence that Defendant James Cortazar had breached his fiduciary duty to the Plaintiff by:

a.    failing to provide the Plaintiff with his fifty (50%) percent share of the rents and profits of the Company since early 2011;

b.    permitting the mortgage loan to default and incur default interest;

c.    permitting the violations against the Premises to go to judgment; and

d.    wrongfully taking the net proceeds of the Company's $800,000.00 mortgage to acquire his own development project in California.

A copy of the October 23 Judgment and Decision after Trial entered on June 7, 2019 is annexed hereto as Exhibit "A."

B.    THE SECOND QUEENS ACTION

23.    By Summons and Complaint dated January 5, 2017, Plaintiff commenced an action against Defendant, James Cortazar, entitled *Vincent Cortazar, Individually and Derivatively on behalf of Long Island City Corp., a/k/a L.I. Citi Corp. against Cojam Construction, Inc. and James Cortazar*, in the Supreme Court of the State of New York, County of Queens under Index No. 700493/2017 (the "Second Queens Action").

6

24.     Plaintiff and Defendant James Cortazar were both fifty (50%) percent shareholders of Long Island City Corp., a/k/a L.I. Citi Corp. (the "L.I. Company"). The Second Queens Action arose out of Defendant's gross misappropriation of the assets of the L.I. Company, his breach of fiduciary duty, fraud, waste, conversion, unjust enrichment and negligence.

25.     The L.I. Company was formed on January 13, 1998 for the purpose of owning and managing a single piece of property known as 29-08 12th Street a/k/a 8-48 Astoria Blvd. a/k/a Welling Court, Long Island City, New York (the "Welling Court Premises"). At the time of its formation and up to the date of commencement of the Second Queens Action, Plaintiff Vincent Cortazar and Defendant James Cortazar were the only shareholders of the L.I. Company. The L.I. Company acquired its sole asset, the Welling Court Premises, by Deed dated August 31, 1998 from Michael A. Canale to the L.I. Company. This deed was erroneously put in the name of Long Island City Corp. as grantee. This error in the Deed as to the grantee was attributable to a scrivener's error.

26.     The Welling Court Premises consisted of a commercial warehouse in the Long Island City section of Queens. The annual rent diverted from the Welling Court Premises was approximately $78,000.00. The Welling Court Premises was mortgaged by a Purchase Money Mortgage on August 31, 1998 for $75,000.00. Vincent Cortazar, from 1998 through 2010, managed the Welling Court Premises.

27.     On or about March 2011, James Cortazar locked Plaintiff Vincent Cortazar out of the L.I. Company's offices, diverted the rents and profits of the L.I. Company to his own uses, and otherwise violated his fiduciary obligations to the L.I. Company in detriment to the L.I. Company and its shareholder, Vincent Cortazar.

28.    Thereafter, on August 31, 2016, Defendant James Cortazar transferred the sole asset of the L.I. Company without notice and without consideration to Cojam Construction, Inc., a corporation which was solely owned by the Defendant James Cortazar.

29.    James Cortazar locked Plaintiff out of the L.I. Company's affairs and had the tenants send their rental payments to a bank account or to a different payor thereby preventing the L.I. Company from receiving any of the benefits of these rents and profits due to the L.I. Company since approximately the summer of 2011.

30.    During the conduct of the litigation of the Second Queens Action, a trial conference was scheduled for June 6, 2019. The Defendant, James Cortazar, failed to appear on that day.

31.    As a result of his non-appearance, an Order was entered in the Second Queens Action by The Honorable Jeremy S. Weinstein on June 6, 2019 (the "June 6 Order") striking Defendant James Cortazar's answer and setting the matter down for an inquest hearing. Annexed as Exhibit "B" is a true copy of the June 6 Order.

32.    A defendant whose answer is stricken as a result of a default admits all allegations in the complaint, including the basic allegation of liability, but does not admit the plaintiff's conclusion as to damages. *Rokina Optical Co. v. Camera King, Inc.*, 63 N.Y.2d 728, 730 (Court of Appeals, 1984) citing *McClelland v. Climax Hosiery Mills*, 252 NY 347, 351 (Court of Appeals 1930).

33.    The Second Queens Action was then set down for an Inquest pursuant to CPLR 3215 before the Honorable Darrell L. Gavrin on December 2, 2019 and December 3, 2019.

34.    Following the Inquest Hearings held on December 2, 2019 and December 3, 2019, Judge Gavrin had essentially adopted Judge Dufficy's finding of facts and conclusions of

8

law entered in the October 23 Judgment and Decision After Trial entered on June 7, 2019 in the First Queens Action. See minutes of the inquest hearings held in the Second Queens Action on December 2, 2019 and December 3, 2019 annexed as Exhibit "C."

35.     As stated by Judge Gavrin in the Second Queens Action: "Judge Dufficy's decision, which I did read, makes it … easier to decide because he has found the significant issues and they are the law of the case." See page 86, lines 4-7 of the minutes from the Inquest hearing conducted in the Second Queens Action at Exhibit "C."

36.     Judge Gavrin also held: "Here, the plaintiff's testimony was forthright, credible,[and] taken together with Judge Dufficy's decisions, I find for the Plaintiff." See page 87, lines 5-8 of the minutes from the Inquest hearing conducted in the Second Queens Action at Exhibit "C."

37.     A judgment was thereafter entered in the Second Queens Action in favor of the Plaintiff and against Defendant, James Cortazar for the sum of $1,991,559.64 on April 26, 2021 (the "April 26 Judgment). Annexed as Exhibit "D" is a true copy of the April 26 Judgment.

C.     THE SUFFOLK COUNTY ACTION

38.     By Summons and Complaint dated July 24, 2019, Plaintiff commenced an action against Defendant, James Cortazar, entitled *Vincent Cortazar, Individually and Derivatiely on behalf of Cojam Realty, Inc. against James Cortazar and Cojam Realty, Inc.*, then pending in Supreme Court, State of New York, County of Suffolk under Index No. 614181/2019 (the "Suffolk County Action").

39.     Plaintiff and Defendant James Cortazar were both fifty (50%) percent shareholders of Cojam Realty, Inc. (the "Cojam Company"). The Suffolk County Action arose

9

out of Defendant's gross misappropriation of the assets of the Cojam Company, his breach of fiduciary duty, fraud, waste, conversion, unjust enrichment and negligence.

40.     The Cojam Company was formed for the purpose of owning and managing property in the State of New York, including real property known as 424 West 126th Street, New York, New York (the "NYC Premises"). At the time of its formation and up to the date of the commencement of the Suffolk County Action, Plaintiff Vincent Cortazar and Defendant James Cortazar were the only shareholders of the NYC Company.

41.     Defendant James Cortazar locked Plaintiff Vincent Cortazar out of the NYC Company's offices, diverted the rents and profits of the NYC Company to his own uses, and otherwise violated his fiduciary obligations to the Cojam Company in detriment to NYC Company and its shareholder, Vincent Cortazar.

42.     On or about September 2021, Defendant, James Cortazar, without the knowledge, consent or authorization of Plaintiff Vincent Cortazar, on behalf of Cojam Company, entered into a Contract of Sale to sell the NYC Premises to West 126 Acquisition LLC (the "Buyer") for the sales price of $350,000.00.

43.     Pursuant to that Contract, the Buyer paid to Madison Title Agency, as Escrowee, the sum of $17,500.00 with the balance of $332,500.00 being due from the Buyer to the Cojam Company at closing.

44.     The Cojam Company could not close the transaction because the buyer's title company would not close as Defendant James Cortazar did not have sufficient "proof of his ability to convey good title on behalf of the corporation."

45.     That by reason of the Cojam Company's failure to close, the buyer commenced an action against the Cojam Company under Index No. 650441/2013 in New York County for specific performance (the "Specific Performance Action").

46.     Defendant James Cortazar permitted and allowed Cojam Company to default in the Specific Performance Action.

47.     On November 25, 2013, the Buyer in the Specific Performance Action obtained an order awarding specific performance of the real estate contract. Title to the NYC Premises was transferred to the Buyer. The proceeds of the sale of the NYC Premises in the sum of $350,000.00 were held in escrow.

48.     In the Specific Performance Action, Cojam Company retained an attorney chosen by James Cortazar without the knowledge or consent of Vincent Cortazar, and the attorney made an application to release the $350,000.00 escrowed funds to Cojam Company. This application was granted on October 21, 2016.

49.     James Cortazar's attorney did not notify or consult Vincent Cortazar regarding his appearance on behalf of Cojam Company in the Specific Performance Action to obtain Cojam Company's funds.

50.     Upon information and belief, $350,000.00 was distributed to Defendant James Cortazar.

51.     Defendant James Cortazar controlled the books and records of Cojam Company.

52.     Defendant James Cortazar did not notify or consult Vincent Cortazar regarding his receipt of Cojam Company's funds.

11

53.     Under Section 270 of the NY Debtor and Creditor Law, Plaintiff Vincent Cortazar is a creditor of Cojam Company.

54.     An inquest in the Suffolk County Action was held before the Honorable Paul J. Baisley on April 27, 2023.

55.     Plaintiff was awarded a Judgment against Defendant James Cortazar in the Suffolk County Action on June 30, 2023 (the "June 30 Judgment") in the sum of $284,756.25.

56.     The June 30 Judgment consisted of compensatory damages in the sum of $171,806.25 plus interest in the sum of $102,180.00.

57.     The June 30 Judgment also contained punitive damages against Defendant James Cortazar in the sum of $10,000.00.

58.     In Judge Baisley's Conclusions of Law rendered in the June 30 Judgment, both the Plaintiff and the Defendant had a fiduciary duty not only to each other but also to the company.

59.     The Court found that Defendant James Cortazar had breached his fiduciary duties by unilaterally and surreptitiously selling an asset of the Cojam Company and retained the proceeds for himself when he had a duty to manage the Cojam Company in a proper and responsible manner and a duty to provide Plaintiff Vincent Cortazar with his share of the profits of Cojam Company.

60.     Judge Baisley ruled in the June 30 Judgment that Plaintiff had presented credible evidence that the Defendant had breached his fiduciary duty to both the Plaintiff and the Company by surreptitiously selling Cojam Company's NYC Premises, retaining the proceeds of the sale for himself and disbursing nothing to Plaintiff Vincent Cortazar despite Plaintiff's fifty (50%) percent interest in the Cojam Company.

12

61.    In awarding Plaintiff punitive damages, Judge Baisley ruled in the June 30 Order that Defendant James Cortazar stole from the Plaintiff by "usurping [his] ownership interest' in the Cojam Company, selling a valuable Cojam Company asset and retaining the proceeds of sale for himself. *Stein v. McDowell*, 74 AD3d, 1323, 1326 [2d. Dept. 2010].

62.    Judge Baisley held that Defendant James Cortazar engaged in this surreptitious and devious type of behavior for his own gain.

63.    In awarding Plaintiff punitive damages, Judge Baisley noted that: "Proof of his conduct clearly and convincingly demonstrated a "high degree of moral culpability" or "wanton dishonesty." *Giblin v. Murphy*, 73 NY2d 769 (1988).  A copy of the June 30 Judgment is annexed as Exhibit "E".

### FIRST CLAIM FOR RELIEF
Objection to Dischargeability of Debt under 11 U.S.C Section 523(a)(2)
Debt Incurred by False Pretenses, a False Representation, or Actual Fraud

64.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "63" of this Complaint as if set forth at length herein.

64.    Under 11 U.S.C. § 523(a)(2), a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (a) false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition.

65.    As stated in the October 23 Judgment entered in the First Queens Action, the Defendant, as a co-member of the Company, owed a duty of loyalty to the Plaintiff.

13

66.    Plaintiff, in reliance upon this relationship with the Defendant, both as a family member and a co-member of the Company, believed that the Defendant would conduct the business of the Company in a forthright and truthful manner.

67.    Defendant, taking advantage of his relationship with the Plaintiff, engaged in a series of under-handed acts involving the Company.

68.    The Defendant incurred the following debts and engaged in actual fraud to the detriment of the Plaintiff by:

a.    diverting the sum of $714,420.21 from the Company to the entity, the Rio Dell Project, involving real property in California without sharing same with the Company or the Plaintiff;

b.    permitting the sum of $548,521.50 to be docketed as Judgment liens against the premises during his control of the Company;

c.    failing to pay and allowing the mortgage on the premises to go into default by refusing to recognize Plaintiff as a member of the Company, causing default interest to become due with bank attorney's fees in the sum of $625,712.94;

d.    failing to disburse and properly share with Plaintiff Vincent Cortazar fifty (50%) percent of the rents and profits of the Company;

e.    failing to provide the Receiver the sum of $6,227.26 in rent securities; and

14

f.      failing to pay water and sewer rents in the City of New York in the sum of $16,936.21.

69.    The Defendant committed the aforementioned acts of actual fraud to the detriment of the Plaintiff.

70.    By virtue of the foregoing, Plaintiff seeks a determination that the October 23 Judgment that he obtained against the Defendant in the First Queens Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A) as a debt incurred under false pretenses, a false representation, or actual fraud for the sum of $1,329,024.01.

SECOND CLAIM FOR RELIEF
Objection to Dischargeability of debt under 11 U.S.C. § 523(a)(4) for
Fraud or defalcation while acting in a fiduciary capacity

71.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "70" of this Complaint as if set forth at length herein.

72.    Under 11 U.S.C. § 523(a)(4), a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

73.    In order to establish a cause of action for breach of fiduciary duty, one must prove: (i) the existence of a fiduciary relationship; (ii) misconduct by the other party including situations of self-dealing or personal interest conflicts; (iii) the fiduciary injuring or acting contrary to the interests of the person to whom a duty of loyalty is owed; and (iv) resultant damages that were caused by the Defendant's conduct. *Kurtzman v. Bergstol*, 40 AD3d 588 [2d Dept 2007].

74.    The October 23 Judgment held that Plaintiff had presented credible evidence that Defendant James Cortazar had breached his fiduciary duty to the Plaintiff by:

15

    a.    failing to provide the Plaintiff with his 50% share of the rents and profits of the Company since early 2011;

    b.    permitting the mortgage loan to default and incur accumulated default interest;

    c.    permitting the violations against the Premises to go to judgment; and

    d.    wrongfully taking the net proceeds of the Company's $800,000.00 mortgage to acquire his own development project in California.

See Exhibit "A."

75.    By virtue of the foregoing, Plaintiff seeks a determination that the October 23 Judgment that he obtained against the Defendant in the First Queens Action be declared to be a nondischargeable debt under 11 U.S.C. Section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity for the sum of $1,329,024.01.

THIRD CLAIM FOR RELIEF
Objection to Dischargeability of Debt under 11 U.S.C. § 523(a)(2)
Debt incurred by false pretenses, a false representation, or actual fraud

76.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "75" of this Complaint as if fully set forth at length herein.

77.    Under 11 U.S.C. § 523(a)(2), a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by (a) false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition.

16

78.    During the conduct of the litigation of the Second Queens Action, a trial conference was scheduled for June 6, 2019.  Defendant, James Cortazar failed to appear on that day.

79.    As a result of his non-appearance, the Court entered the June 6 Order striking Defendant James Cortazar's answer and setting the matter down for an inquest hearing. See Exhibit "B."

80.    A defendant whose answer is stricken as a result of a default admits all allegations in the complaint, including the allegations of liability, but does not admit the plaintiff's conclusion as to damages. *Rokina Optical Co. v. Camera King, Inc.*, 63 N.Y.2d 728, 730 (Court of Appeals, 1984) citing *McClelland v. Climax Hosiery Mills*, 252 NY 347, 351 (Court of Appeals 1930).

81.    The Defendant, as a co-member of the L.I. Company, owed a duty of loyalty to the Plaintiff.

82.    Plaintiff, in reliance upon this relationship with the Defendant, both as a family member and a fifty (50%) percent shareholder of the L.I. Company, believed that the Defendant would conduct the business of the L.I. Company in a forthright and truthful manner

83.    Defendant, taking advantage of his relationship with the Plaintiff, engaged in a series of under-handed acts involving the L.I. Company.

84.    Upon information and belief, the Defendant incurred the following debts and engaged in actual fraud to the detriment of the Plaintiff by:

a.    locking the Plaintiff out of the L.I. Company's offices and diverting the rents and profits of the L.I. Company for his own uses;

17

b.     transferring the L.I. Company's sole asset, the commercial warehouse located at 29-08 12th Street a/k/a Astoria Blvd a/k/a Welling Court, Long Island City, New York, without notice to the Plaintiff or consideration, to Cojam Construction, Inc., a corporation solely owned by the Defendant; and

c.     diverting rental payments received from the Welling Court Premises to a different bank account or a different payor.

85.    The Defendant committed the aforementioned acts with actual fraud to the detriment of the Plaintiff.

86.    By virtue of the foregoing, Plaintiff seeks a determination that the April 26 Judgment that he obtained against the Defendant in the Second Queens Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A) as a debt incurred under false pretenses, a false representation, or actual fraud for the sum of $1,991,559.64.

FOURTH CLAIM FOR RELIEF<br>
Objection to Dischargeability of debt under 11 U.S.C. § 523(a)(4) for<br>
Fraud or defalcation while acting in a fiduciary capacity

87.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "86" of this Complaint as if fully set forth at length herein.

88.    Under 11 U.S.C. § 523(a)(4), a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny

89.    In order to establish a claim for relief for breach of fiduciary duty, one must prove: (i) the existence of a fiduciary relationship; (ii) misconduct by the other party including

18

situations of self-dealing or personal interest conflicts; (iii) the fiduciary injuring or acting contrary to the interests of the person to whom a duty of loyalty is owed; and (iv) resultant damages that were caused by the Defendant's conduct. *Kurtzman v. Bergstol*, 40 AD3d 588 [2d Dept 2007].

90.    In the Second Queens Action, on December 2, 2019 and December 3, 2019, Judge Gavrin had essentially adopted Judge Dufficy's finding of facts and conclusions of law entered in the October 23 Judgment in the First Queens Action. See Exhibit "C."

91.    Defendant was in a fiduciary relationship with the Plaintiff as a fifty (50%) percent shareholder of the L.I. Company.    Defendant, as a shareholder in a closely held corporation, owed a fiduciary duty to the Plaintiff.

92.    Defendant committed misconduct by transferring the L.I. Company's sole asset, the Welling Court Premises without notice to the Plaintiff or consideration, to Cojam Construction, Inc., a corporation solely owned by the Defendant.

93.    Defendant injured Plaintiff by transferring the Welling Court Premises for his own personal self-interests to the detriment of the Plaintiff.

94.    Defendant's actions damaged the Plaintiff, as Plaintiff was denied access to his share of the rents and profits from 2011 up to the commencement of the Second Queens Action.

95.    By virtue of the foregoing, Plaintiff seeks a determination that the April 26 Judgment that he obtained against the Defendant in the Second Queens Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity for the sum of $1,991,559.64.

19

FIFTH CLAIM FOR RELIEF
Objection to Dischargeability of Debt under 11 U.S.C. § 523(a)(2)
Debt incurred by false pretenses, a false representation, or actual fraud

96.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "95" of this Complaint as if set forth at length herein.

97.     Under 11 U.S.C. § 523(a)(2), a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition.

98.     An inquest in the Suffolk County Action was held before the Honorable Paul J. Baisley on April 27, 2023.

99.     Plaintiff was awarded a Judgment against Defendant James Cortazar in the Suffolk County Action on June 30, 2023 (the "June 30 Judgment") in the sum of $284,756.25.

100.    The June 30 Judgment consisted of compensatory damages in the sum of $171,806.25 plus interest in the sum of $102,180.00.

101.    The June 30 Judgment also contained punitive damages against Defendant James Cortazar in the sum of $10,000.00.

102.    The Defendant, as a fifty (50%) percent shareholder of the L.I. Company, owed a duty of loyalty to the Plaintiff.

103.    Plaintiff, in reliance upon his relationship with the Defendant, both as a family member and a fifty (50%) percent shareholder of the L.I. Company, believed that the Defendant would conduct the business of the L.I. Company in a forthright and truthful manner.

104.    Defendant, taking advantage of his relationship with the Plaintiff, engaged in a series of under-handed acts involving the L.I. Company.

20

105.   The Defendant incurred the following debts and engaged in actual fraud to the detriment of the Plaintiff by:

    a.    entering into a contract of sale for the NYC Premises owned by Cojam Company to West 126 Acquisition, LLC without the knowledge or consent of the Plaintiff;

    b.    permitting the Cojam Company to default in conveying title to the NYC Premises to West 126 Acquisition, subjecting the Company to a specific performance action; and

    c.    retaining for himself, to the detriment of the Plaintiff, the proceeds of sale from the NYC Premises for the sum of $350,000.00

106.   In awarding Plaintiff punitive damages, Judge Baisley ruled in the June 30 Judgment that Defendant James Cortazar stole from the Plaintiff by "usurping [his] ownership interest' in the Company, selling a valuable Company asset and retaining the proceeds of sale for himself. *Stein v. McDowell*, 74 AD3d, 1323, 1326 [2d. Dept. 2010]. See Exhibit "E."

107.   In awarding Plaintiff punitive damages, Judge Baisley noted that: "Proof of his conduct clearly and convincingly demonstrated a "high degree of moral culpability" or "wanton dishonesty." *Giblin v. Murphy*, 73 NY2d 769 (1988). See Exhibit "E."

108.   The Defendant committed the aforementioned acts with actual fraud to the detriment of the Plaintiff.

109.   By virtue of the foregoing, Plaintiff seeks a determination that the June 30 Judgment that he obtained against the Defendant in the Suffolk County Action be declared to be a

21

nondischargeable debt under 11 U.S.C. § 523(a)(2)(A) as a debt incurred under false pretenses, a false representation, or actual fraud for the sum of $284,756.25.

<u>SIXTH CLAIM FOR RELIEF</u>
Objection to Dischargeability of debt under 11 U.S.C. § 523(a)(4) for
Fraud or defalcation while acting in a fiduciary capacity

110. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "109" of this Complaint as if fully set forth at length herein.

111. Under 11 U.S.C. § 523(a)(4), a discharge under 11 U.S.C. § 727 does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

112. In order to establish a cause of action for breach of fiduciary duty, one must prove: (i) the existence of a fiduciary relationship; (ii) misconduct by the other party including situations of self-dealing or personal interest conflicts; (iii) the fiduciary injuring or acting contrary to the interests of the person to whom a duty of loyalty is owed; and (iv) resultant damages that were caused by the Defendant's conduct. *Kurtzman v. Bergstol*, 40 AD3d 588 [2d Dept 2007].

113. Defendant was in a fiduciary relationship with the Plaintiff as a fifty (50%) percent shareholder of the company. Defendant, as a shareholder in a closely held corporation, owed a fiduciary duty to the Plaintiff as a fifty (50%) percent shareholder.

114. Defendant committed misconduct by entering into a contract of sale for the NYC Premises to West 126 Acquisition, LLC without the knowledge or consent of the Plaintiff.

115. Defendant injured Plaintiff by retaining for himself, to the detriment of the Plaintiff, the proceeds of sale from the NYC Premises for the sum of $350,000.00.

116. Defendant's actions damaged the Plaintiff, as Plaintiff was denied access to his share of the proceeds of sale from the NYC Premises.

22

117.    The Court in the Suffolk County Action found that the Defendant James Cortazar had breached his fiduciary duties by unilaterally and surreptitiously selling an asset of the Cojam Company and retained the proceeds for himself when he had a duty to manage the Cojam Company in a proper and responsible manner and a duty to provide Plaintiff Vincent Cortazar with an appropriate share of the profits of the Cojam Company.

118.    Judge Baisley ruled in the June 30 Judgment that Plaintiff had presented credible evidence that the Defendant had breached his fiduciary duty to both the Plaintiff and the Cojam Company by surreptitiously selling Cojam Company assets, retaining the proceeds of the sale for himself and disbursing nothing to Plaintiff Vincent Cortazar despite Plaintiff's fifty (50%) percent interest in the Cojam Company. See Exhibit "E."

119.    In awarding Plaintiff punitive damages, Judge Baisley ruled in the June 30 Order that Defendant James Cortazar stole from the Plaintiff by "usurping [his] ownership interest' in the Company, selling a valuable Company asset and retaining the proceeds of sale for himself. *Stein v. McDowell*, 74 AD3d, 1323, 1326 [2d. Dept. 2010]. See Exhibit "E".

120.    Judge Baisley held that Defendant James Cortazar engaged in this surreptitious and devious type of behavior for his own gain.

121.    In awarding Plaintiff punitive damages, Judge Baisley noted that: "Proof of his conduct clearly and convincingly demonstrated a "high degree of moral culpability" or "wanton dishonesty." Giblin v. Murphy, 73 NY2d 769 (1988). See Exhibit "E"

122.    By virtue of the foregoing, Plaintiff seeks a determination that the June 30 Judgment that he obtained against the Defendant in the Suffolk County Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity for the sum of $284,756.25.

23

SEVENTH CLAIM FOR RELIEF
Objection to Discharge under 11 U.S.C Section 727(a)(2)(B)

123.   Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "122" of the Complaint as if fully set forth at length herein.

124.   Under 11 U.S.C. § 727(a)(2)(B), the Court shall grant the Debtor a discharge, unless the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed - property of the estate, after the date of the filing of the petition.

125.   At the Section 341 Meeting conducted during the Debtor's Chapter 11 proceeding on December 9, 2024, Plaintiff learned that:

a.   the Defendant was collecting substantial rents from tenants at his real properties and not paying any of his secured creditors, but instead spending those funds as he deemed appropriate, which was in direct violation of the Bankruptcy Code;

b.   the Debtor also testified that he owns a property located at 10 Blueridge Road in Shelter Cove, California ("10 Blueridge Road"), which has a value, according to the Debtor, of at least $850,000.00 with a mortgage of only $325,000.00;

c.   the Debtor testified that he collects rent of $4,800.00 a month from the tenant occupying 10 Blueridge Road;

24

d.    the Debtor testified that he also collects rent of at least $2,600.00 a month from the tenants occupying 720 Dinsmore Ranch Road, Rio Dell, California ("720 Dinsmore"); and

e.    the Debtor also testified as to his other properties where he has tenants paying substantial rents which may be property of this Bankruptcy Estate.

126.    The rents collected by the Defendant from the 10 Blueridge Road and 720 Dinsmore properties, along with any other real properties that he may own, are property of the Estate under 11 U.S.C. § 541.

127.    The Defendant Debtor has collected the post-petition rent from the 10 Blueridge Road Property and 720 Dinsmore premises without turning over same to the Chapter 7 Trustee, who is an officer of the estate charged with custody of this property of the Estate.

128.    By virtue of the foregoing, the Defendant's discharge should be denied under 11 U.S.C. § 727(a)(2)(B).

EIGHTH CLAIM FOR RELIEF
Objection to Discharge Under 11 U.S.C. § 727(a)(4)(A)

129.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "128" of this Complaint as if more fully set forth at length herein.

130.    Under 11 U.S.C. § 727(a)(4)(A), the Court shall grant the Debtor a discharge, unless the Debtor, knowingly and fraudulently, or in connection with the case  made a false oath or account.

131.    At the Section 341 Meeting on December 9, 2024, the Defendant testified that he owns substantial real property that was not properly described in the Schedule A/B filed by

25

the Debtor, as he mixed up those properties that he owns individually with those properties owned by a corporation in which he is the sole or majority member.

132.    The Debtor gave conflicting testimony as to whether he owned the real property at 21 Triple Oak Lane, St. James, New York (the "St. James Property").

133.    Originally, the Defendant Debtor "guessed" that he owned the St. James Property, then claimed it was owned by Cortazar Enterprises, LLC and then B. Cortazar Enterprises.

134.    The Debtor testified that he believed the balance owed on the note and mortgage encumbering the St. James Property was $800,000.00, but his Schedule D claimed that the balance was $625,475.00.

135.    The Defendant failed to list his ownership interest in the business known as Rio Del Tio AR, LLC in response to Question No. 19 of Schedule A/B.

136.    The Defendant failed to list his ownership interest in the business known as Rio Del Tio AR, LLC in response to Question No. 27 of his Statement of Financial Affairs.

137.    The Defendant did not list any rental income from either 10 Blueridge Road, 720 Dinsmore or any other properties that he owned in response to Question No. 5 of his Statement of Financial Affairs.

138.    The Defendant Debtor did not list any rental income from either 10 Blueridge Road, 720 Dinsmore or any other properties that he owned in response to Question No. 30 of Schedule A/B.

139.    By failing to disclose the rental income he received from 10 Blueridge Road and 720 Dinsmore, his ownership interest in the business entity, Rio Del Tio AR, LLC, and incorrectly listing the balance owed on the note and mortgage encumbering the St. James Property,

26

the Defendant, knowingly and fraudulently, in or in connection with the case, made a false oath or account.

140.    By virtue of the foregoing, the Defendant's discharge should be denied under 11 U.S.C. § 727(a)(4)(A).

NINTH CLAIM FOR RELIEF
Objection to Discharge Under 11 U.S.C. § 727(a)(6)

141.    Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "140" of this Complaint as more fully set forth at length herein.

142.    Under 11 U.S.C. § 727(a)(6), the Court shall grant the Debtor a discharge, unless the Debtor has refused in the case to obey any lawful order of the court, other than an order to respond to a material question or to testify.

143.    According to the United States Trustee's Motion to Dismiss or Convert this case dated December 16, 2024 (Docket Item No. 35), by Order of the Bankruptcy Court entered on November 5, 2024 (the "November 5 Order") (Docket No. 8), the Debtor was directed to appear at the Initial Case Management Conference in the superseded Chapter 11 case on November 21, 2024. Annexed as Exhibit "F" is a true copy of the November 5 Order.

144.    The Debtor refused to attend the Initial Case Management Conference as required by the November 5 Order.

145.    The November 5 Order is a lawful Order of the Bankruptcy Court.

146.    The November 5 Order is not an order to respond to a material question.

147.    The November 5 Order is not an order directing the Debtor to testify.

148.    The Debtor refused to obey the November 5 Order, which is a lawful Order of the Bankruptcy Court.

27

149. By virtue of the foregoing, the Defendant's discharge should be denied under 11 U.S.C. § 727(a)(6).

WHEREFORE, Plaintiff demands judgment:

a. on Plaintiff's First Claim for Relief, a determination that the October 23 Judgment that Plaintiff obtained against the Defendant in the First Queens Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A) as a debt incurred under false pretenses, a false representation, or actual fraud for the sum of $1,329,024.01

b. on Plaintiff's Second Claim for Relief, a determination that the October 23 Judgment that the Plaintiff obtained against the Defendant in the First Queens Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity for the sum of $1,329,024.01;

c. on Plaintiff's Third Claim for Relief, a determination that the April 26 Judgment that the Plaintiff obtained against the Defendant in the Second Queens Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A) as a debt incurred under false pretenses, a false representation, or actual fraud for the sum of $1,991,559.64;

d. on Plaintiff's Fourth Claim for Relief, a determination that the April 26 Judgment that the Plaintiff obtained against the

28

Defendant in the Second Queens Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity for the sum of $1,991,559.64;

e.      on Plaintiff's Fifth Claim for Relief, a determination that the June 30 Judgment that the Plaintiff obtained against the Defendant in the Suffolk County Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(2)(A) as a debt incurred under false pretenses, a false representation, or actual fraud for the sum of $284,756.25;

f.      on Plaintiff's Sixth Claim for Relief, a determination that the June 30 Judgment that the Plaintiff obtained against the Defendant in the Suffolk County Action be declared to be a nondischargeable debt under 11 U.S.C. § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity for the sum of $284,756.25;

g.      on Plaintiff's Seventh Claim for Relief, the entry of an Order denying the Debtor's Chapter 7 discharge under § 727(a)(2)(B);

h.      on Plaintiff's Eighth Claim for Relief, the entry of an Order denying the Debtor's Chapter 7 discharge under 11 U.S.C. § 727(a)(4)(A);

i.      on Plaintiff's Ninth Claim for Relief, the entry of an Order denying the Debtor's Chapter 7 discharge under 11 U.S.C. § 727(a)(6);

j.      the costs and fees; and

k.      such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
April 8, 2025

Weinberg, Gross & Pergament LLP
Attorneys for Plaintiff Vincent Cortazar

By: _____

Marc A. Pergament
400 Garden City Plaza, Suite 309
Garden City, New York  11530
(516) 877-2424

30